IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF ANTONIO BONACCORSO
BY SPECIAL ADMINISTRATOR AMANDA BONACCORSO,

Plaintiff,

v. Case No: 24-CV-01528-PP

AKINADE FATEYE (in his individual capacity) and MILWAUKEE COUNTY

Defendants.

---

**DEFENDANT AKINADE FATEYE'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Defendant Akindae Fateye, by his attorneys, Crivello, Nichols & Hall, S.C., respectfully submits the following Reply Brief in Support of his Motion for Summary Judgment.

## INTRODUCTION

Plaintiff has not produced evidence sufficient to establish a constitutional violation by Officer Akinade Fateye. The seriousness of Bonaccorso's suicide does not relieve Plaintiff of its burden to establish the elements of individual liability. Neither an asserted failure to respond to mental health needs nor a failure to protect against suicide can proceed without evidence that Fateye's conduct crossed the constitutional threshold. Once a movant identifies the absence of evidence supporting an essential element, the opposing party must identify specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Plaintiff's responses establish that Fateye observed no words or conduct suggesting mental or emotional distress or suicidality; that Fateye responded to Bonaccorso's breathing complaint by providing his inhaler and summoning assistance; that Fateye checked Bonaccorso at 1:48 p.m. at which time Bonaccorso was fine; and that Fateye conducted an additional pipe-chase tour at 2:03 p.m. at which time he saw nothing amiss. (Dkt. 56, ¶¶ 21–23, 28, 40; Dkt. 57, ¶ 1.) The acknowledged departure from the full-tour policy does not establish purposeful, knowing, or reckless disregard of a constitutionally significant risk, objective unreasonableness, or causation. Independently, Plaintiff has not identified law clearly establishing that Fateye's particular conduct violated the Constitution in May 2023. Accordingly, the Court should grant summary judgment on every theory of individual liability asserted against Fateye.

## ARGUMENT

### I. PLAINTIFF HAS NOT ESTABLISHED THE ESSENTIAL ELEMENTS OF ITS CLAIM AGAINST FATEYE

The Fourteenth Amendment supplies the governing standard because Bonaccorso was a pretrial detainee. Fateye's opening brief addresses the medical-care theory through the requirements of an objectively serious condition; purposeful, knowing, or reckless conduct with respect to its consequences; and objective unreasonableness. *Hardeman v. Curran*, 933 F.3d 816, 827 (7th Cir. 2019) (Sykes, J., concurring); *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019); *Miranda v. Cty. of Lake*, 900 F.3d 335, 354 (7th Cir. 2018). Plaintiff's failure-to-protect formulation likewise requires an intentional decision, a substantial risk of serious harm, an objectively unreasonable failure to take available protective measures, and a causal connection to the injury. *Kemp v. Fulton Cty.*, 27 F.4th 491, 496–97 (7th Cir. 2022).

The objective standard does not require proof that Fateye subjectively intended the injury or recognized that his conduct was constitutionally unreasonable. But it does require more than

negligence, including gross negligence. *Williams*, 937 F.3d at 942 (citing *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018)). The Court evaluates the circumstances confronting an officer at the time rather than treating the eventual injury as proof that the danger was obvious beforehand. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Plaintiff's evidence fails under those requirements.

### A. The Existence of a Serious Medical Condition Does Not Establish the Remaining Required Elements of the Claim.

Fateye does not dispute that suicide and suicidal ideation are objectively serious medical conditions. *McKinney v. Franklin Cnty., Illinois*, 417 F. Supp. 3d 1125, 1138 (S.D. Ill. 2019). That concession establishes only the nature of the medical need. It does not establish that Fateye acted with the required culpability, that his response was objectively unreasonable, or that his conduct caused Bonaccorso's death. Plaintiff must establish those separate elements to obtain a verdict against him. The seriousness of the outcome cannot supply evidence missing from the individual-liability analysis, and Plaintiff has failed to put forth evidence identifying a triable issue on those elements.

### B. Plaintiff Has Not Established the Required Culpability Concerning the Consequences of Fateye's Conduct

Plaintiff expressly admits that Fateye never observed Bonaccorso do or say anything suggesting to him mental or emotional distress, let alone suicidality. (Dkt. 56, ¶ 40.) Fateye also declares that Bonaccorso never told him he was suicidal or contemplating self-harm and that no one informed him, nor did he otherwise learn, information suggesting mental or emotional distress or suicidality. (Dkt. 48, ¶¶ 8–9.) Plaintiff's admission forecloses any argument that Fateye observed or was otherwise aware of any warning signs upon which he should have acted, which is the prerequisite of an actionable claim.

Plaintiff's disputes of Fateye's Joint Proposed Findings of Fact Nos. 29, 41, and 42 do not change this result. Even if accepted as true, Plaintiff's position on those facts relies on the general risks associated with segregation, Bonaccorso's unrelated breathing complaint, and Bonaccorso's objection to discipline. (Dkt. 56, ¶¶ 29, 41–42.) None of those "facts" identifies a communication or indication to Fateye that Bonaccorso, specifically, was suicidal or at imminent risk of becoming so. Plaintiff admits that Bonaccorso denied deserving the disciplinary placement and that Fateye offered to discuss it with a supervisor. Plaintiff further admits that, when Bonaccorso reported breathing difficulty, Fateye supplied the inhaler and called for assistance, after which Gonzalez took Bonaccorso to the clinic. (Dkt. 56, ¶¶ 18–23, 25.) These interactions do not establish that Fateye disregarded a communicated mental health need or an apparent suicide risk.

The distinction is legally material. The Seventh Circuit's suicide analysis distinguishes general distress and even a psychiatric history from facts pointing directly toward suicidality. *Estate of Wallmow v. Oneida Cnty.*, 99 F.4th 385, 391 (7th Cir. 2024). Plaintiff cannot transform general knowledge that segregation carries risks into proof that Fateye purposefully, knowingly, or recklessly disregarded the consequences of his conduct toward Bonaccorso. Knowledge of the inspection rule and a deliberate choice of inspection method are not relevant where there exists no proof that Fateye could or should have known of a risk of negative consequences specific to Bonaccorso. An intentional decision still must expose the detainee to a substantial risk and be objectively unreasonable. *Miranda*, 900 F.3d at 354; *Kemp*, 27 F.4th at 496–97.

Nor may information possessed elsewhere in the institution simply be attributed to Fateye. Monitoring resident calls and messages was not part of his duties, a fact Plaintiff expressly admits. (Dkt. 56, ¶ 66.) Fateye confirmed that he never had access to Bonaccorso's communications. (Dkt. 48, ¶ 11.) Plaintiff's responses identify no particular warning from those communications that was

transmitted to Fateye. Institutional allegations therefore do not fill the evidentiary gap in the claim against him individually.

### C. Plaintiff Has Not Established Objectively Unreasonable Conduct

Objective reasonableness must be assessed from the whole contemporaneous record. Fateye had never interacted with Bonaccorso before the morning in question. Bonaccorso had been placed in B2 for discipline and was not on suicide watch. Plaintiff admits those facts and admits that suicide-watch residents were housed in O2 rather than B2. (Dkt. 56, ¶¶ 8–9, 16, 54–55.) Plaintiff also admits that medical and mental health staff frequently assessed Bonaccorso for suicide or self-harm risk and never concluded during their contacts with him that he presented such a risk. (Dkt. 56, ¶¶ 71–72.) Those facts defeat the premise that Fateye was confronting an identified suicide risk that demanded precautions beyond the circumstances apparent to him when he interacted with Bonaccorso.

Fateye's conduct likewise was responsive to the needs that arose of which he was aware. Plaintiff admits the provision of the inhaler and the call for assistance, Bonaccorso's clinic visit, and Fateye's conversations concerning the disciplinary placement. (Dkt. 56, ¶¶ 12–14, 18–25.) Plaintiff further admits that Gonzalez informed mental health staff of the disciplinary placement during the clinic visit and that Fateye sent mental health staff an email at 2:15 p.m. identifying Bonaccorso as newly assigned to B2. (Dkt. 56, ¶¶ 13, 30.) Plaintiff's admitted chronology shows assistance and communication, rather than disregard of any need or request for mental health treatment.

As to observation, Plaintiff admits the 1:48 p.m. check of Bonaccorso and expressly admits that, in addition to that full tour, Fateye conducted a pipe-chase tour at 2:03 p.m. (Dkt. 56, ¶ 28; Dkt. 57, ¶ 1.) Fateye acknowledges that the pipe chase was not an authorized substitute for a full

tour. His declaration explains that he had multiple tasks, his relief was late, and he believed a full tour would take him beyond the prescribed interval. (Dkt. 48, ¶¶ 14–15.) Plaintiff admits that Fateye remained in the unit awaiting relief when Smith arrived shortly before 2:30 p.m. and that Fateye briefed both Smith and the relieving officer. (Dkt. 56, ¶¶ 31–34.)

Ultimately, the Court need not choose Fateye's explanation over Plaintiff's competing interpretation to grant judgment. Even assuming the intentional substitution of an inadequate inspection method, the policy breach does not establish the federal violation. An internal jail policy cannot itself define the constitutional threshold. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc); *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020). The rule may be probative, but Plaintiff must still establish objectively unreasonable conduct in relation to a known or obvious substantial risk. The absence of observed warning signs, affirmative medical assistance, admitted observations, and continued presence in the unit prevent Plaintiff from converting this policy departure into proof of constitutionally inadequate protection merely because suicide followed.

Calling the required checks "baseline" precautions does not change the governing burden. Whether the claimed omission concerns routine checks or heightened suicide monitoring, Plaintiff must establish a federal violation rather than merely demonstrate that Fateye should have performed a more complete tour. The objective standard measures his conduct against the particular circumstances, not against perfect compliance with internal procedures or knowledge acquired after the event. *Kingsley*, 576 U.S. at 397; *Williams*, 937 F.3d at 942. On this record, Plaintiff's inspection theory establishes, at most, the kind of deficient performance or negligence that does not itself sustain the constitutional claim.

### D. Plaintiff's Causation Argument Does Not Supply the Missing Constitutional Elements

The failure-to-protect formulation requires a causal connection between the challenged failure to take reasonable measures and the injury. *Kemp*, 27 F.4th at 497. Plaintiff admits that Smith discovered Bonaccorso hanging at approximately 2:33 p.m., that the discovery triggered an immediate emergency response, and that Bonaccorso died the following day at the hospital. (Dkt. 56, ¶¶ 35–39.) Those facts establish discovery and the ensuing response. They do not establish when the attempt began or what – if anything – a compliant earlier tour would have revealed.

Even assuming that an additional full inspection could have produced an earlier discovery, the possibility of a different outcome does not establish either that the inspection departure caused the fatal injury or that Fateye's conduct was constitutionally unreasonable when he acted. Plaintiff must support those inferences with evidence rather than assume a connection. In particular, discovery at approximately 2:33 p.m. does not itself establish what was observable at 2:03 p.m. The Court must draw reasonable inferences for Plaintiff, but the burden to identify specific facts supporting the necessary elements remains. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. 242. The asserted opportunity for earlier intervention cannot substitute for proof of the culpability and objective unreasonableness that the claim also requires. Even if the Court concludes that causation presents a factual question, Plaintiff's failures on those independent elements still require judgment for Fateye.

## II. QUALIFIED IMMUNITY INDEPENDENTLY REQUIRES JUDGMENT FOR FATEYE

### A. Plaintiff Must Establish Both a Constitutional Violation and Clearly Established Law

Qualified immunity remains an independent ground for judgment. Once the defense is raised, Plaintiff must establish both a violation and that the asserted right was clearly established

when the challenged conduct occurred; failure on either prong defeats the claim. *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015); *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). For the reasons above, Plaintiff cannot establish a constitutional violation. Even assuming that it could, it has not met the second prong.

The right must be defined with sufficient specificity to address the particular conduct, and existing precedent must place its unlawfulness beyond debate. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Plaintiff must identify a closely analogous case, a clear trend of relevant authority, or conduct so egregious that no reasonable official could have thought it lawful. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620–21 (7th Cir. 2022). General recognition of a duty to protect detainees from suicide does not answer that inquiry.

### B. Plaintiff Has Not Met its Burden to Identify Clearly Established Law Governing the Conduct at Issue Placing it Squarely Beyond Debate

The particular question is whether, in May 2023, clearly established law made Fateye's inspection conduct unconstitutional despite the admitted absence of observed signs suggesting mental or emotional distress or suicidality, the recent full tour, and the additional pipe-chase observation. (Dkt. 56, ¶¶ 28, 40; Dkt. 57, ¶ 1.) Plaintiff must show more than that Fateye knew the CRC's full-tour requirement. Knowledge of a local procedure establishes neither that every departure violates the Constitution nor that the particular departure was clearly unconstitutional.

Plaintiff invokes decisions recognizing protection against deliberate indifference to a substantial suicide risk, obligations concerning material suicide-risk information, and the significance of disputes about risk and protective measures. *Hall v. Ryan*, 957 F.2d 402, 405 (7th Cir. 1992); *Cavalieri v. Shepard*, 321 F.3d 616, 620–21 (7th Cir. 2003); *Estate of Clark v. Walker*,

865 F.3d 544, 552–53 (7th Cir. 2017). As presented in Plaintiff's opposition, those authorities do not establish that the conduct at issue here is constitutionally indistinguishable from disregarding an identified substantial suicide risk. Plaintiff's admission in No. 40, together with its failure to identify a particular suicide warning conveyed to Fateye in its responses to Plaintiff's Proposed Findings of Fact Nos. 41 and 42, leaves that necessary comparison unsatisfied. (Dkt. 56, ¶¶ 40–42.)

Nor has Plaintiff established any of the recognized alternatives: a sufficiently analogous decision, a clear trend, or circumstances so obviously unconstitutional that no reasonable official could disagree. The contemporaneous medical assistance, admitted observations, and absence of observed warning signs prevent characterization of the inspection lapse as that exceptional, obvious case. Qualified immunity applies where reasonably competent officials could disagree about whether the conduct violated federal rights. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A violation of the CRC's rule does not remove that protection.

Fateye's immunity argument rests on Plaintiff's failure to identify sufficiently particularized pre-incident authority. Qualified immunity protects reasonable mistakes of judgment unless the conduct violates the demanding clearly-established-law standard. *City & Cty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015). Plaintiff has not carried that burden.

## CONCLUSION

Based upon the foregoing arguments and authorities, along with his moving brief and the record as a whole, Officer Fateye respectfully requests that this Court grant his Motion for Summary Judgment and dismiss Plaintiff's claim against him on its merits, in its entirety, and with prejudice, together with the costs, fees and disbursements of this action.

Dated this 14th day of October, 2026.

CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendant, Akinade Fateye

By: *s/ Nathaniel J. Cullen*

SAMUEL C. HALL, JR.
State Bar No. 1045476
SARA C. MILLS
State Bar No. 1029470
NATHANIEL J. CULLEN
State Bar No. 1112966
710 N. Plankinton Avenue, Suite 500
Milwaukee, WI 53203
Phone: 414-271-7722
Fax: 414-271-4438
E-mail: shall@crivellolaw.com
smills@crivellolaw.com
ncullen@crivellolaw.com